UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN–SOUTHERN DIVISION

DOMINIQUE BUTLER,
    Plaintiff,

                                                                   Case No.
-vs-                                                              Hon.

UNIFUND CCR, LLC,
PILOT RECEIVABLES MANAGEMENT, LLC,
FMS, INC.,
CLIENT SERVICES INC., and
CITIBANK, N.A.
    Defendants.

**COMPLAINT & JURY DEMAND**

*Plaintiff, Dominique Butler, states the following claims for relief*:

**Nature of Action**

1. This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and similar state consumer protection statutes, which prohibit abusive, deceptive and unfair collection practices.

2. Plaintiff's claims arise from Defendants' attempts to collect on a previously paid debt in the State of Michigan through the means and instrumentalities of interstate commerce and the mails.

**Jurisdiction**

3. This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

4. This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law

1

claims.

## Venue

5. The transactions and occurrences which give rise to this action occurred in Oakland County.

6. Venue is proper in the Eastern District of Michigan.

## Parties

7. The Plaintiff to this lawsuit is Dominique Butler ("Ms. Butler"), a natural person who resides in Madison Heights, Michigan 48071.

8. Ms. Butler is a consumer as defined by 15 U.S.C. § 1692a(3).

9. The Defendants to this lawsuit are as follows:

   a. Unifund CCR, LLC ("Unifund"), a collection agency operating from a place of business located in Cincinnati, Ohio, which conducts collection activities by use of the mails and telephone within the State of Michigan, and whose registered agent, CSC-Lawyers Incorporating Service (Company), maintains a registered office address at 601 Abbot Road, East Lansing, MI 48823. Unifund is a "debt collector" as defined by 15 U.S.C. §1692a(6).

   b. Pilot Receivables Management, LLC ("PRM"), a debt buyer operating from a place of business located in Cincinnati, Ohio, which acquires debt in default merely for collection purposes, and which conducts such collection activities within the State of Michigan. PRM is a "debt collector" as defined by 15 U.S.C. §1692a(6), and was at all relevant times a direct participant in Unifund's efforts to collect a debt from Ms. Butler.

    c.    FMS, Inc. ("FMS"), a collection agency operating from a place of business located in Tulsa, Oklahoma, which conducts collection activities by use of the mails and telephone within the State of Michigan, and whose registered agent, CSC-Lawyers Incorporating Service (Company), maintains a registered office address at 601 Abbot Road, East Lansing, MI 48823. FMS is a "debt collector" as defined by 15 U.S.C. §1692a(6).

    d.    Client Services Inc. ("Client Services"), a collection agency operating from a place of business located in St. Charles, MO, which conducts collection activities by use of the mails and telephone within the State of Michigan, and whose registered agent, CSC-Lawyers Incorporating Service (Company), maintains a registered office address at 601 Abbot Road, East Lansing, MI 48823. Client Services is a "debt collector" as defined by 15 U.S.C. §1692a(6).

    e.    Citibannk, N.A. *formerly known as* Citibank (South Dakota), N.A. ("Citibank"), a foreign corporation doing business in Michigan with its headquarters located in Sioux Falls, South Dakota.

## General Allegations

10. Sometime between late 2007 and early 2008, Ms. Butler obtained a Citi Visa credit card, account number ending in 4127 ("the debt").

11. The debt at issue arises out of an alleged transaction that was primarily for personal, family or household purposes and, therefore, meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

12. Ms. Butler made timely payments on the debt between 2008 and 2010.

13. In 2010, Ms. Butler suffered some financial difficulty and was forced to temporarily forgo payments.

14. Sometime prior to October 2010, Citibank engaged Client Services to collect the debt and authorized Client Services to collect and compromise the debt.

15. Client Services obtained the debt after Ms. Bulter defaulted on it.

16. On October 12, 2010, Ms. Butler received a letter from Client Services stating that its client, Citibank, would agree to accept $600.000 as settlement in full for the debt.

17. On October 13, 2010, Ms. Butler paid the $600 to Client Services via a MoneyGram payment transaction.

18. This transaction operated as settlement in full for the debt.

19. Even though Ms. Butler resolved the debt with Citibank's authorized agent, Client Services, in December 2013, FMS began collection efforts in relation to the debt.

20. FMS claims that Citibank placed the debt with its office for collection.

21. FMS sent Ms. Butler four letters entitled "Settlement Offer" between the period of December 2013 and March 2014.

22. At the time FMS sent its "Settlement Offer" letters, Ms. Butler had already paid the debt through payment to Client Services.

23. Therefore, FMS's communications falsely represented the amount of the debt as Ms. Butler had already paid the debt and had no obligation whatsoever for the amount allegedly owed.

24. The false representations were the direct result of one or more of the following:

    a. Citibank's false representations to FMS that the debt remained outstanding;

      b.     Client Services's failure to inform Citibank that Ms. Butler had paid the settlement amount offered as payment in full of the debt; or, in the alternative

      c.     FMS's own actions in falsely representing that it had received the debt.

25.     In September 2014, a third debt collector, PRM, appeared and claimed to collect the same Citibank account that Ms. Butler had resolved.

26.     PRM claims to have obtained the debt from Citibank.

27.     PRM obtained the debt after the debt was in default and after it had already been paid.

28.     Upon information and belief, PRM engaged a fourth debt collector, Unifund, to seek repayment from Ms. Butler of the paid Citibank account.

29.     PRM engaged Unifund under a written contract to collect the debt on PRM's behalf.

30.     Upon information and belief, PRM and Unifund run a common joint venture, pursuant to a written agreement, to collect debts from consumers, including Ms. Butler.

31.     Unifund accepts payments with the knowledge that it is accepting the payments on behalf of PRM, and that the money accepted is in repayment of debts.

32.     PRM is thoroughly involved in the debt collection business, and PRM is a significant participant in Unifund's debt collection process.

**Specific Allegations Related to Unifund's Attempted Collections Against Ms. Butler**

33.     Ms. Butler incorporates the preceding allegations by reference.

34.     On September 3, 2014, Unifund sent a letter to Ms. Butler claiming that PRM owned the debt and Unifund was attempting to collect $886.74 on PRM's behalf for payment.

35.     This communication falsely represented the amount of the debt as Ms. Butler had already paid the debt and had no obligation whatsoever for the amount allegedly owed.

36. The false representations were the direct result of one or more of the following:

   a. Citibank's false representations to FMS, PRM and/or Unifund that the debt remained outstanding;

   b. Client Services's failure to inform Citibank that Ms. Butler had paid the settlement amount offered as payment in full of the debt;

   c. FMS's failure to inform PRM or Unifund that Ms. Butler had paid the settlement amount offered by Client Services on behalf of Citibank; or, alternatively

   d. Unifund's and PRM's own actions in falsely representing that they had received the debt for collection.

37. Further, Unifund, itself and on behalf of PRM, threatened to communicate credit information which is known or which should be known to be false as the communication included reference that a negative credit bureau report reflecting on Ms. Butler's credit record may be submitted to a credit reporting agency if she failed to pay.

38. Also included in this communication, Unifund, itself and on behalf of PRM, stated that if Ms. Butler notified its office in writing within 30 days that she disputed the debt, or any portion thereof, Unifund would obtain verification of the debt or a copy of a judgment and mail Ms. Butler a copy of such judgment or verification, as required by law.

39. On September 29, 2014, Ms. Butler sent a letter to Unifund by certified mail explaining that she had already paid the debt and, therefore, that she was disputing any responsibility for payment to PRM or Unifund.

40. In her letter, Ms. Butler asked that Unifund respond with appropriate documentation to verify the validity of the debt, including the original signed contract, billing statements,

any recorded payments made, or any other documentation showing an amount due or that Unifund is entitled to collect on the debt.

41. Unifund, itself and on behalf of PRM, responded to Ms. Butler's letter on October 16, 2014, and in such written communication stated in relevant part:

> This account was opened 10/06/2007 and was charged off on 08/05/2010. This account had a balance of $886.74 at time of assignment. The last four digits of the responsible party's social security number is [omitted]. The total amount due in order to satisfy this account is $886.74.

42. Beyond an open date, charge-off date and balance, Unifund failed to provide any meaningful verification of the debt, including its failure to provide billing statements or other documentation as requested by Ms. Butler.

43. Further, this communication again falsely represented the amount owed as Ms. Butler had previously paid $600 as settlement in full for the debt.

44. On information and belief, the repeated false representation was the direct result of one or more of the following:

   a. Citibank's false representations to FMS, PRM and/or Unifund that the debt remained outstanding;

   b. Client Services's failure to inform Citibank that Ms. Butler had paid the settlement amount offered as payment in full of the debt;

   c. FMS's failure to inform PRM or Unifund that Ms. Butler had paid the settlement amount offered by Client Services on behalf of Citibank; or

   d. Unifund's and PRM's own actions in falsely representing that it had received the debt.

45. On October 28, 2014, Unifund sent Ms. Butler a second letter stating that it was in receipt of Ms. Butler's correspondence.

46. With this letter, Unifund included two Citi mtvU Platinum Select Visa Card statements reflecting Ms. Butler's name and the account number for the debt as verification.

47. However, the verification did not include the number and amount of previously made payments, or any further documentation to show an amount due or that Unifund is entitled to collect on the debt on behalf of PRM.

48. Further, although Ms. Butler had indicated that she already paid the debt at issue, Unifund stated in its second letter that Ms. Butler would need to provide further documentation, such as proof of prior resolution or payments, in order to resolve the account with Unifund.

49. Ms. Butler never opened any account with Unifund, and she is not required to provide any such proof of prior payment as requested; to the contrary, Unifund bore a duty under 15 U.S.C. § 1692g to validate the debt itself.

50. On November 19, 2014, Ms. Butler called Unifund to again explain that she had already paid the debt at issue.

51. During that call, a Unifund representative who identified herself as Amber told Ms. Butler that Unifund bought the debt from Citibank, and Citibank had no record or proof of payment.

52. Further, Unifund has been reporting its collection account to one or more of the major credit bureaus and should have known that the debt was paid or impaired.

53. This reporting continued after Ms. Butler had notified Unifund, both verbally and in

writing, that she had already paid the debt and, therefore, disputed that she owed any amount.

54. As a result of the acts alleged above, Ms. Butler has suffered damages.

### COUNT I – Fair Debt Collection Practices Act (All Defendants with the exception of Citibank)

55. Ms. Butler incorporates the preceding allegations by reference.

56. The actions of Client Services and FMS violated the provisions of the FDCPA including, but not limited to: 15 U.S.C. §§ 1692e and 1692f.

57. The actions of PRM and Unifund in attempting to collect this alleged debt from Ms. Butler violated the provisions of the FDCPA including, but not limited to: 15 U.S.C. §§ 1692e, 1692f, and 1692g.

58. Ms. Butler suffered damages as a result of these violations of the FDCPA.

### COUNT II – Michigan Occupational Code as alternative to claims under the Michigan Collection Practices Act (All Defendants with the Exception of Citibank)

59. Ms. Butler incorporates the preceding allegations by reference.

60. Defendants, with the exception of Citibank, are each a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

61. Ms. Butler is a "debtor" as that term is defined in M.C.L. § 339.901(f).

62. The foregoing acts of Client Services and FMS in attempting to collect this alleged debt from Ms. Butler constitute violations of the MOC including, but not limited to, the following: M.C.L. §§ 339.915.

63. The foregoing acts of PRM and Unifund in attempting to collect this alleged debt from Ms. Butler constitute violations of the MOC including, but not limited to, the following:

M.C.L. §§ 339.915 and 339.918.

64. Ms. Butler suffered damages as a result of these violations of the MOC.

65. These violations of the MOC were willful.

### COUNT III – Michigan Collection Practices Act as alternative to claims under the Michigan Occupational Code (All Defendants)

66. Ms. Butler incorporates the preceding allegations by reference.

67. Defendants, with the exception of Citibank, are each a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g).

68. Defendant Citibank is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(ii).

69. Defendants' actions in attempting to collect from Ms. Butler violated the MCPA including, but not limited to, the following: M.C.L. §§ 445.252.

70. Ms. Butler suffered damages as a result of these violations of the MCPA.

71. These violations of the MCPA were willful.

### Demand for Jury Trial

72. Ms. Butler demands trial by jury in this action.

### Demand For Judgment for Relief

73. *Accordingly, Plaintiff Dominique Butler requests that the Court grant:*

   a. *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

   b. *Statutory damages.*

   c. *Treble damages.*

10

    d.    *Statutory costs and attorney fees.*

    e.    *A declaration that Ms. Butler no longer owes the Citibank account.*

    Respectfully Submitted,

    <u>By: s/ Amanda M. Longendyke</u>
    Amanda M. Longendyke (P-77777)
    LYNGKLIP & ASSOCIATES
    CONSUMER LAW CENTER, PLC
    Attorney For Dominique Butler
    24500 Northwestern Highway, Ste. 206
    Southfield, MI 48075
    (248) 208-8864
    Amanda@MichiganConsumerLaw.Com

Dated: January 19, 2015